[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-12572

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 24, 2004
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-21125-CV-FAM

SME RACKS, INC., a Florida corporation,
VALTEC INFORMATION SYSTEMS, INC.,
a Florida corporation,

Plaintiffs-Appellants,

RAFAEL A. CASTRO, MR.,
individually,

Plaintiff,

versus

SISTEMAS MECANICOS PARA ELECTRONICA, S.A.,
a Spanish company, CARMELO GARCIA APARICIO.,
S.A., et al.

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 24, 2004)

Before BLACK, BARKETT and STAHL[*], Circuit Judges.

_____

[*]Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by
designation.

BARKETT, Circuit Judge:

SME Racks, Inc. ("SME Racks") and Valtec Information Systems, Inc. ("Valtec"), two Florida corporations, and Rafael A. Castro ("Castro"), a Florida citizen,[1] appeal the dismissal of their suit against a Spanish corporation, Sistemas Mecanicos Para Electronica, S.A. ("Sistemas Mecanicos"), arising out of their purchase of allegedly defective goods. The question on appeal is whether the district court abused its discretion in dismissing this case on grounds of <u>forum non conveniens</u>.[2] We find that the district court abused its discretion by failing to apply the strong presumption that a United States citizen will not be ousted from the courts of this country and reverse.

## BACKGROUND

Acting in his capacity as owner of Valtec, Castro attended an industry exhibition in Las Vegas, Nevada, where Sistemas Mecanicos was promoting its products. Negotiations between Castro and Sistemas Mecanicos began in Las Vegas, and Sistemas Mecanicos followed up by twice sending agents to Castro's Miami office to negotiate a business plan. Castro then went to Spain twice to further negotiate and finalize their international agreement. The contract was

---

[1]Appellants will be referred to collectively as "SME Racks."

[2]The district court adopted in whole the Report and Recommendation of the magistrate judge. For convenience, we refer to the Report as if it were the district court's opinion.

2

executed in Spain and provided that "[b]oth parties submit and refer themselves to Spanish law and to settle any disputes that may arise between them as a result of this contract."

The products were manufactured in Spain and shipped to Florida, and payment was sent. When the goods were found to be defective, Sistemas Mecanicos sent a replacement shipment. Castro claimed that this shipment also contained defective products. Castro consequently filed a diversity action in federal court alleging numerous contract and tort claims.[3]

Sistemas Mecanicos moved for dismissal on grounds of forum non conveniens. After determining that Spanish courts could provide an adequate and available alternative forum,[4] the district court concluded that the private convenience factors were at or near equipoise because witnesses and evidence were located in both Florida and Spain. The district court then found that the public convenience factors, "particularly the fact that the Court will have to apply Spanish law–weigh strongly in favor of dismissal on forum non conveniens grounds."

---

[3]In its Second Amended Complaint, SME Racks has asserted claims for: fraud in the inducement; rescission of purchase agreement; promissory estoppel; quasi-contract/quantum meruit; unjust enrichment; negligent misrepresentation; negligent design, manufacture, and inspection; negligent assembly, inspection, packing, and storage; breach of oral agreement; breach of express warranty; breach of duty of good faith and fair dealing.

[4]That Spanish courts provide an independent and adequate alternative forum is not at issue in this appeal.

3

Report at 8.  The district court granted Sistemas Mecanicos's motion and SME

Racks filed this appeal.

## STANDARD OF REVIEW

A district court's forum non conveniens determination "may be reversed

only when there has been a clear abuse of discretion; where the court has

considered all relevant public and private interest factors, and where its balancing

of these factors is reasonable, its decision deserves substantial deference."  Piper

Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). "[T]he court abuses its discretion

when it fails to balance the relevant factors."  La Seguridad v. Transytur Line, 707

F.2d 1304, 1308 (11th Cir. 1983).  Furthermore, "where the court does not weigh

the relative advantages of the respective forums but considers only the

disadvantages of one, it has abused its discretion."  Id. at 1307.

## DISCUSSION

In considering a motion for dismissal on grounds of forum non conveniens,

> the trial judge must consider all relevant factors of private interest,
> weighing in the balance a strong presumption against disturbing
> plaintiffs' initial forum choice.  If the trial judge finds this balance of
> private interests to be in equipoise or near equipoise, he must then
> determine whether or not factors of public interest tip the balance in
> favor of a trial in a foreign forum.[5]

---

[5]We have clarified that although "private factors are generally considered more important" than public ones, courts should consider both public and private factors "in all cases." Leon v. Millon Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001) (internal citations omitted).

Id. at 1307.

The Supreme Court set out in detail in Gulf Oil Corporation v. Gilbert, 330 U.S. 501 (1947), factors to be considered in balancing the private and public interests. The Court explained:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.
>
> Factors of public interest also have a place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

5

330 U.S. at 508-09 (emphasis added).

## A. Private Interest Factors

As the Gilbert Court made clear, with regard to the weighing of the private interests, the plaintiffs' choice of forum should rarely be disturbed "unless the balance is strongly in favor of the defendant." Id. at 508. This presumption in favor of the plaintiffs' initial forum choice in balancing the private interests is at its strongest when the plaintiffs are citizens, residents, or corporations of this country. Leon v. Millon Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001) ("[B]alancing private interests requires determining the convenience of the parties, affording domestic plaintiffs 'a strong presumption' that their forum choice is sufficiently convenient, and a weaker presumption applying in cases brought by foreign plaintiffs.").

While the Supreme Court has been clear that "dismissal should not be automatically barred when a [domestic] plaintiff has filed suit in his home forum," Piper Aircraft Co. 454 U.S. at 255 n.23 (emphasis added),[6] in this Circuit we have

_____

[6]In full, the Supreme Court stated that:

In Koster, we stated that "[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." As the District Court correctly noted in its opinion, the lower federal courts have routinely given less weight to a foreign plaintiff's choice of forum. A citizen's forum choice should not be given dispositive weight, however. Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be

long mandated that district courts "'require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" La Seguridad, 707 F.2d at 1308 n.7 (quoting Burt v. Isthmus Dev. Co., 218 F.2d 353, 357 (5th Cir. 1953)[7]); see also Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339, 342 (8th Cir. 1983) (requiring same standard); Founding Church of Scientology v. Verlag, 536 F.2d 429, 435 (D.C. Cir. 1976) (same).

While the district court referenced the presumption in favor of plaintiffs' choice of forum in the introductory portion of its discussion, the district court failed to articulate the relevant standards and failed to apply any presumption in its analysis. First, the district court failed to recognize our rule that "positive evidence of unusually extreme circumstances" must be present and that the court must be "thoroughly convinced that material injustice is manifest" before ousting a

---

automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.

Piper Aircraft Co., 454 U.S. at 255 n.23 (internal citations omitted).

[7]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

domestic plaintiff from this country's courts. La Seguridad, 707 F.2d at 1308 n.7.

The district court's reference to the presumption in favor of the plaintiffs' choice of

forum also fails to make clear that this presumption is to be applied specifically

when weighing the private interests. Id. at 1307.

Second, even if we were to assume that the district court correctly

understood the proper legal standard, the district court never mentions the

presumption in favor of the plaintiffs or incorporates the presumption into its

calculus once it actually engages in weighing the private interests. Indeed, the

Report makes clear that the district court entirely failed to consider the

presumption in favor of the plaintiffs' choice of forum in its analysis at all.

After establishing that an adequate and available forum existed in Spanish

courts, the district court opinion turned to balancing the private interest factors. In

determining that the private convenience factors were at or near equipoise, the

district court focused only on factors related to the practical problems that make

"trial of a case easy, expeditious, and inexpensive," such as where the evidence and

witnesses are located. Applying these factors, both fora were found to be equally

inconvenient. In full, this portion of the Report reads as follows (for ease of

reference, we have numbered the paragraphs):

> [1] Relevant private factors include the relative ease of access to
> sources of proof, ability to obtain witnesses, and all other practical

problems that make trial of a case easy, expeditious, and inexpensive. [2] Witnesses who examined the merchandise when it was unloaded in Florida are located in Florida. Additionally, the allegedly defective products were shipped to Florida and are currently located in Florida, some of the negotiations took place in Florida, and Defendants' representatives traveled to Florida on at least one occasion to negotiate.

[3]However, weighing in favor of transfer to Spain is the fact that witnesses who shipped and manufactured the merchandise, as well as Defendants, are located in Spain. Additionally, in light of the fact that Plaintiffs alleged, in part, that the merchandise was defectively manufactured, it may be necessary to examine Defendants' manufacturing facilities, which are located in Spain. Finally, the documentary evidence is located in both Florida and Spain, and some of it is in Spanish.

[4] The Court concludes that the private convenience factors are at or near equipoise. If the Court only considered only [sic] those factors, without looking at the public interest factors, then the Court would conclude that trial in either forum - this Court or Spain - would be equally inconvenient. However, because the private interest factors are at or near equipoise, the Court must consider the public interest factors.

Report at 3-4 (internal citation and punctuation omitted).

This section of the Report follows the standard format of stating a test, applying the test to the circumstances of the case, and thereby reaching a conclusion. In ¶1, the district court set out the test that guided its analysis, namely that "[r]elevant private factors include the relative ease of access to sources of proof, ability to obtain witnesses, and all other practical problems that make trial of a case easy, expeditious, and inexpensive." Nothing in this statement of the rule indicates that the plaintiffs' choice is given substantial deference in weighing the

9

private interest factors. In ¶¶2-3 the district court applied the test as it was framed, focusing only on factors related to the practical problems that make "trial of a case easy, expeditious, and inexpensive." The Report offers no suggestion that the court accorded the plaintiffs' choice any deference in the analysis. Finally, in ¶4, the district court concluded that the private interest factors were at or near equipoise because "trial in either forum - this Court or Spain - would be equally inconvenient." In sum, there is simply no hint from the opinion, that in weighing the private interest factors, the district court considered the strong presumption in favor of the domestic plaintiffs' choice of forum.

Nor is there any basis to speculate that the district court simply failed to mention the presumption in its application section, but nevertheless considered the presumption and determined that the presumption was defeated.[8] If any presumption exists in favor of the plaintiffs' choice (never mind a presumption requiring "positive evidence of unusually extreme circumstances" before upsetting the plaintiffs' choice), then by definition the plaintiffs' choice must win if all other factors are equal. See Gulf Oil Corp., 330 U.S. at 508 ("[U]nless the balance is strongly in favor of the defendant[s], the plaintiff[s'] choice of forum should rarely

---

[8]See Dissent at 20-21 ("[T]he only sensible way to understand the district court's conclusion that the private interests were at or near equipoise is that the strong presumption in favor of domestic plaintiffs was partly defeated, not that it was ignored.").

be disturbed."). Thus, for the district court to have applied the presumption in determining that the private interest factors were at or near equipoise, the district court would have had to silently determine that a trial in Florida was sufficiently more inconvenient than a trial in Spain in order to counterbalance the presumption in favor of the plaintiffs' choice of forum.

This theory simply cannot be reconciled with the district court's explication of its own logic – the reason the private interest factors were, in its view, at or near equipoise was because "either forum - this Court or Spain - would be equally inconvenient." In light of this language, the only way the presumption could have been applied is to read the district court's pronouncement that both forums are "equally inconvenient" as short hand for: "the Spanish forum is more convenient than this forum, but when weighed against the presumption in favor of the plaintiffs' choice of forum, the two can be understood as equally inconvenient." While there is a deferential standard of review, we need not engage in such conjecture. The district court simply found that the convenience factors were about equal and failed to weigh the presumption in favor of the plaintiffs into the balance. This failure is a clear abuse of discretion. See La Seguridad, 707 F.2d at 1307 ("[T]he court abuses its discretion when it fails to balance the relevant

11

factors.").[9]

## B. Public Interest Factors

Because reversal and remand are appropriate solely based upon the district court's failure to balance all the relevant private interest factors, we need not determine whether the district court again abused its discretion in weighing the public interest factors. Nevertheless, we feel it useful to express some concern that in weighing the public interest factors the district court failed to consider the United States' strong interests in providing a forum for this litigation.

"Relevant public interest factors include the sovereigns' interests in deciding the dispute." Republic of Panama, v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 953 (11th Cir. 1997). While the district court recognized that Florida

---

[9]Judge Black's dissent that suggests our interpretation

opens a Pandora's Box of problems regarding the review of a district court's *forum non conveniens* decision. Suppose 51 percent of the evidence were in Spain, and 49 percent were in Florida—would the strong presumption in favor of domestic plaintiffs tilt the balance in favor of retaining jurisdiction? What about 52 percent? 55 percent? 60 percent? In the *forum non conveniens* scale, precisely how heavily does the strong presumption in favor of domestic plaintiffs' forum choices weigh?

Dissent at 21. In this case, the district court made clear that it found both fora "equally inconvenient." Thus, if any presumption applies at all, it must apply in this situation. Whether a district court would abuse its discretion in determining that 51 percent, 52 percent, or 55 percent of the evidence is sufficient to constitute "positive evidence of unusually extreme circumstances" warranting dismissal is simply not before us. La Seguridad, 707 F.2d at 1308 n.7. What is before us is a case where the district court unequivocally found that both fora were equally inconvenient and yet determined that the private interest factors were at or near equipoise. The presumption in favor of the plaintiff simply was not applied.

12

had an interest in this litigation, it failed to recognize any federal interest.

Yet, we have been clear that "[t]here is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1311 (11th Cir. 2002); see also Burt, 218 F.2d at 356 ("This nation has historically been most solicitous of its citizens' welfare and its courts exist as much for the adjudication of its citizens' controversies as for the enforcement of its laws." ). Furthermore, it is clear that a sovereign has a very strong interest when its citizens are allegedly victims and the injury occurs on home soil. See, e.g., Piper Aircraft, 454 U.S. 235 (1981) (finding that Scotland had a stronger interest than the United States in hearing the case in part because "[t]he accident occurred in its airspace" and "[a]ll of the decedents were Scottish"); Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1284 (11th Cir. 2001) (holding that Argentina's interest in deciding the dispute was stronger than the United States where all the victims of a plane crash were Argentinean and the plane crashed in Argentina). Thus, in this case, the United States has a strong interest in providing a forum for its citizens' grievances against an allegedly predatory foreign business that actively solicited business and caused harm within the home forum.

These factors distinguish this case from other cases where we found that the public interest factors weighed in favor of dismissal because of the application of foreign law.[10] Moreover, while the application of foreign law is an important factor to be considered in weighing the public interests, this factor cannot be accorded dispositive weight.[11]

## CONCLUSION

We conclude that the district court clearly abused its discretion in dismissing this case and therefore REVERSE and REMAND for further proceedings consistent with this opinion.

---

[10]All but one of our cases that the district court relies upon in supporting its assertion that the application of foreign law weighs heavily in favor of dismissal involve only foreign plaintiffs. See Ford v. Brown, 319 F.3d 1302 (11th Cir. 2003) (English citizen); Leon, 251 F.3d 1305 (Ecuadorian citizens); Republic of Panama, 119 F.3d 935 (the Republic of Panama); Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424 (11th Cir. 1996) (French citizens); Sibaja v. Dow Chem. Co., 757 F.2d 1215 (11th Cir. 1985) (Costa Rican citizens); Sigalas v. Lido Maritime, Inc., 776 F.2d 1512 (11th Cir. 1985) (Greek nationals).

The only case relied upon by the district court in which plaintiffs were not all foreign was Satz, 244 F.3d at 1279. That case involved a products liability suit brought by the estates of victims of an airplane crash in Argentina. All of the victims were Argentinean nationals, and of the five plaintiff representatives of the estates, four were Argentinean (although one resided in Florida), and one was a United States citizen living in Argentina. Id. at 1281 n.1. The court noted that the private factors weighed heavily in favor of dismissal because most of the evidence, including the crash wreckage, witnesses, and important documents were in Argentina. Id. at 1283-84. Also, besides the application of foreign law, the court noted that the public factors weighed in favor of Argentina because all of the victims were Argentinean. Id. at 1284. Thus, in Satz, although one of the plaintiffs was a United States citizen, he was a resident abroad and all other factors pointed overwhelmingly in favor of forum non conveniens dismissal.

[11]See Burt, 218 F.2d at 357 ("There are, no doubt, difficulties in attempting to determine and apply foreign law; but the necessity to do so often occurs. . . . In such cases, the rules of the foreign law and their interpretation are simply questions of fact, and the conclusion is as reviewable as any other fact issue . . . A different situation might be presented if the federal court were being asked to enforce some equitable or otherwise unusual relief peculiar to the foreign law . . . [however] [t]he fact that success or failure depends upon the law of Mexico *does not, of itself, justify dismissal*.") (emphasis added) (citations omitted).

BLACK, Circuit Judge, dissenting:

I respectfully dissent from today's decision for two overarching reasons. First, the majority's private interest analysis does not accord sufficient deference to the district court's decision.[1] Second, the majority's public interest pronouncements are improvident dicta.

## I. *FORUM NON CONVENIENS* IN GENERAL

Generally speaking, three Supreme Court cases provide the foundation for analyzing *forum non conveniens* issues. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839 (1947)*; Koster v. (Am.) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 67 S. Ct. 828 (1947); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S. Ct. 252 (1981). *Gilbert* established the familiar private/public interests framework. 330 U.S. at 508–09, 67 S. Ct. at 843. Relevant private interests include access to sources of proof, the availability and cost of attendance of witnesses, the possibility of view of the premises, "and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508, 67 S. Ct. at 843. Relevant public interests, on the other hand, include administrative difficulties with deciding litigation in congested centers rather than at their origin, the imposition of jury duty on a community unrelated to the litigation, the relative interests of the possible fora, and the interest in a court avoiding the necessity of "untangl[ing]

---

[1] Like the majority, for convenience I treat the Magistrate Judge's Report and Recommendation as if it were the district court's opinion.

problems in conflict of laws, and [applying] law foreign to itself." *Id.* at 508–09, 67 S. Ct. at 843. *Gilbert*'s companion case, *Koster*, stated the strong presumption in favor of a home plaintiff's choice of forum. 330 U.S. at 524, 67 S. Ct. at 831–32. Finally, *Piper Aircraft* clarified that this presumption is "somewhat" weaker when the plaintiff is a foreigner. 454 U.S. at 255 n.23, 102 S. Ct. at 266 n.23. Nevertheless, even though the deference due a domestic plaintiff's forum choice is greater, *Piper Aircraft* explained:

> A citizen's forum choice should not be given dispositive weight, however. Citizens or residents deserve *somewhat* more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.

*Id.* (emphasis added and citations omitted).

With this foundation in mind, we have previously clarified that a district court must merely do three things before concluding a case should be dismissed under *forum non conveniens*. *C.A. La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983). First, it must identify an adequate alternative forum. *Id.* (citing *Gilbert*, 330 U.S. at 506–07, 67 S. Ct. at 842). Second, according the plaintiff's forum choice the appropriate deference under *Koster* and *Piper Aircraft*, it must weigh the private interests. *Id.* (citation omitted). Third, if the private interests are at or near equipoise, it must consider whether factors of public interest

16

"tip the balance in favor of a trial in a foreign forum."[2] *Id.* (citation omitted). In short, I respectfully disagree with today's decision because I believe the district court adequately undertook all three steps.

## II. THE MAJORITY'S PRIVATE INTEREST ANALYSIS

Despite the limited nature of our review, the majority finds the district court's analysis of the litigants' private interests constituted a clear abuse of discretion. Respectfully, I disagree.

A.  *Abuse of Discretion Review*

The Supreme Court has strenuously admonished appellate courts that they may reverse a district court's *forum non conveniens* decision only when there has been a "*clear* abuse of discretion." *Piper Aircraft*, 454 U.S. at 257, 102 S. Ct. at 266 (emphasis added). To that end, "where the [district] court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id.* Specifically, when applying abuse of discretion review, the Supreme Court has instructed appellate courts not to fall into the trap of "los[ing] sight of this rule, and substitut[ing their] own judgment for that of the District Court." *Id.*, 102 S. Ct. at 266–67.

The majority has fallen into this trap. The crux of today's holding is that the district court failed to apply the presumption in favor of domestic plaintiffs' forum

---

[2] To aid appellate review, we previously clarified that district courts should consider both public and private factors "in all cases." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).

17

choice. Unfortunately, the majority is able to justify this conclusion only because it does not limit its review for error to a clear abuse of discretion. Typically, when we ask whether a district court abused its discretion, we ask whether the district court applied the relevant law to the relevant facts. For example, even though we might disagree with the district court's decision, we generally find a district court abused its discretion only when it applied the wrong rule, failed to balance the relevant factors, or only considered the disadvantages of one of the fora. *See Transytur Line*, 707 F.2d at 1308. In contrast, when we review a question de novo, we do not accord the district court's reasoning any deference. Today's opinion, however, does not question whether the district court applied the wrong rule,[3] failed to balance the relevant factors, or only considered the disadvantages of one of the fora—instead, the district court is reversed because it did not apply the rule stringently or meaningfully enough. This holding therefore blurs the important distinction between review for a clear abuse of discretion and de novo review.

B.    *The District Court's Recognition and Application of the Strong Presumption*

There can be no question the district court was aware of and applied the strong presumption in favor of a plaintiff's initial forum choice. The district court

---

[3] The majority suggests the district court "failed to articulate the relevant standards," (Opinion at 7), but I do not understand why the majority attaches talismanic significance to the fact the district court did not (1) quote "our rule that 'positive evidence of unusually extreme circumstances' must be present and that the court must be 'thoroughly convinced that material injustice is manifest,'" or (2) explain the presumption only applies "when weighing the private interests," (Opinion at 7). Given the district court's explicit and repeated recognition of the strong presumption in favor of a plaintiff's forum choice, *see infra* Part II.B, I do not think it was necessary for the district court also to regurgitate the majority's particular magic words.

18

referenced the strong presumption three times. First, the district court explicitly referenced the "*strong presumption* against disturbing plaintiffs' initial forum choice." (Report at 3 (emphasis added; citation and internal punctuation omitted).) Second, the district court explained that "courts should apply the doctrine of *forum non conveniens* only in *rare* cases." (*Id.* (emphasis added and internal punctuation omitted) (citing *Gilbert*, 330 U.S. at 510, 67 S. Ct. at 843).) Third, when balancing the private and public factors, the district court clarified that "unless the balance is *strongly* in favor of the defendants, the plaintiffs' choice of forum should *rarely* be disturbed." (*Id.* (emphasis added and internal punctuation omitted) (citing *Gilbert*, 330 U.S. at 508, 67 S. Ct. at 843).) I do not see how the district court could have demonstrated fuller awareness of the strong presumption in favor of a plaintiff's initial forum choice short of stating it a fourth time with the proviso "I really mean it this time."[4]

C.  *The District Court's Analysis of the Private Interests in Light of the Strong Presumption*

I believe the district court's decision is entitled to "substantial deference" because it "considered all relevant public and private interest factors, and . . . its balancing of [those] factors [was] reasonable." *Piper Aircraft*, 454 U.S. at 257, 102 S. Ct. at 266.

---

[4] The majority suggests the district court "never mentions the presumption in favor of the plaintiffs or incorporates the presumption into its calculus once it actually engages in weighing the private interests." (Opinion at 8.) I do not understand how the addition of the words "the presumption was defeated" would be any different from adding the proviso "I really mean it this time."

Considering the private interest factors explicitly set out in *Gilbert*, in light of its previous acknowledgment of the strong presumption in favor of a domestic plaintiff's forum choice, the district court ultimately concluded "the private convenience factors are at or near equipoise." (Report at 4.) To contextualize the district court's reasoning, it is necessary to set it out at length:

> Witnesses who examined the merchandise when it was unloaded in Florida are located in Florida. Additionally, the allegedly defective products were shipped to Florida and are currently located in Florida, some of the negotiations took place in Florida, and Defendants' representatives traveled to Florida on at least one occasion to negotiate.
>
> However, weighing in favor of transfer to Spain is the fact that witnesses who shipped and manufactured the merchandise, as well as Defendants, are located in Spain. Additionally, in light of the fact that Plaintiffs alleged, in part, that the merchandise was defectively manufactured, it may be necessary to examine Defendants' manufacturing facilities, which are located in Spain. Finally, the documentary evidence is located in both Florida and Spain, and some of it is in Spanish.

(Report at 4 (citation omitted).)

Essentially, the majority holds that when these substantive facts are combined with the strong presumption in favor of a domestic plaintiff's forum choice, a district court clearly abuses its discretion by dismissing the case on *forum non conveniens* grounds. This conclusion, however, cannot be reached under review for abuse of discretion without substituting the majority's discretion for that of the district court. Instead, the only sensible way to understand the district court's conclusion that the private interests were at or near equipoise is that the

20

strong presumption in favor of domestic plaintiffs was partly defeated, not that it was ignored.[5]

The latter interpretation, unfortunately, opens a Pandora's Box of problems regarding the review of a district court's *forum non conveniens* decision. Suppose 51 percent of the evidence were in Spain, and 49 percent were in Florida—would the strong presumption in favor of domestic plaintiffs tilt the balance in favor of retaining jurisdiction? What about 52 percent? 55 percent? 60 percent? In the *forum non conveniens* scale, precisely how heavily does the strong presumption in favor of domestic plaintiffs' forum choices weigh? Abuse of discretion review is supposed to obviate the need of appellate courts to draw such arbitrary lines in the sand because it commits such decisions to the district court's sound discretion.[6] Unfortunately, today's opinion simultaneously deprives district courts of their

---

[5] The majority declines to "speculate that the district court simply failed to mention the presumption in its application section, but nevertheless considered the presumption and determined that the presumption was defeated." (Opinion at 10.) In contrast, because we may only review the district court's decision for a clear abuse of discretion, I would decline to speculate that despite *repeatedly* stating the presumption in its rule section, the district court nevertheless "*entirely failed* to consider the presumption in its analysis at all." (Opinion at 8.)

[6] The majority reasons that because "the district court made clear that it found both fora 'equally inconvenient[,]' if any presumption applies at all, it must apply in this situation." (Opinion at 12 n.9.) Thus, the majority interprets the district court to have determined that *precisely* 50 percent of the evidence was in Spain, and *precisely* 50 percent of the evidence was in the United States. This interpretation, however, ignores the district court's actual conclusion that the private interests were "at *or near* equipoise." (Order at 4 (emphasis added).) Given the scope of this conclusion, and the limited scope of our review, I believe the district court calculated the presumption in favor of a plaintiff's forum choice did not outweigh its determination that somewhat more evidence was in Spain than the United States. As such, the majority commits the exact same error as countless advocates at oral argument by protesting that the Pandora's Box problem does not apply in this case. (*See* Opinion at 12 n. 9.) Not only does the Pandora's Box problem apply to the instant case, but it will certainly apply with full force to the next.

discretion to determine these thorny *forum non conveniens* issues while failing to provide them a clear cut rule for future application.

D.     *Summary*

For these reasons, I respectfully disagree with the majority's conclusion that the district court committed a clear abuse of discretion when it weighed the litigants' private interests.  Instead, I believe the district court adequately acknowledged the presumption, and still concluded, as was within its discretion, that the private interests were at or near equipoise.

### III.  THE MAJORITY'S PUBLIC INTEREST ANALYSIS

The district court found two public interests militated toward dismissal: the application of Spanish law and administrative burdens.  The majority concludes the district court's reasoning was in error.  I disagree with the majority's public interest analysis for two reasons.

First, as the majority expressly concedes, (Opinion at 12), its pronouncements regarding public interests are dicta.  *See Denno v. Sch. Bd. of Volusia County, Fla.*, 218 F.3d 1267, 1283 (11th Cir. 2000) (defining dicta as court statements that are "not necessary" to decide a case).

Second, the dicta regarding the application of foreign law as a relevant public interest consideration are inconsistent with no fewer than eight Eleventh Circuit cases and two Supreme Court cases.  The Supreme Court and Eleventh Circuit have repeatedly held that avoiding the application of foreign law is a

relevant public interest consideration. *Piper Aircraft*, 454 U.S. at 251, 102 S. Ct. at 263; *Gilbert*, 330 U.S. at 509, 67 S. Ct. at 843; *Ford v. Brown*, 319 F.3d 1302, 1307 (11th Cir. 2003); *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1315 (11th Cir. 2001); *Satz*, 244 F.3d at 1284; *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 953 (11th Cir. 1997); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996); *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1520 (11th Cir. 1985); *Sibaja v. Dow Chemical Co.*, 757 F.2d 1215, 1217 n.4 (11th Cir. 1985); *Transytur Line*, 707 F.2d at 1307.

The majority tries to distinguish these cases by noting that none of them involved exclusively domestic plaintiffs. (Opinion at 14 & n.10.) When analyzing the public interests, however, this is a distinction without difference. The presumption in favor of a domestic plaintiff's forum does not apply when weighing the public interests. *See Transytur Line*, 707 F.2d at 1307 ("[T]he trial judge must consider all relevant factors of *private* interest, *weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice*. If the trial judge finds this balance of private interests to be in equipoise or near equipoise, he must then determine whether or not factors of *public* interest tip the balance in favor of trial in a foreign forum." (second emphasis added)). Instead, the presumption applies only to the weighing of the litigants' private interests. *See id.* Indeed, it makes no sense to weigh the presumption in favor of domestic plaintiffs' forum choices a second time when considering the public interests. Public factors only

23

concern the interests of the local court and local community, *see Gilbert*, 330 U.S. at 508–09, 67 S. Ct. at 843, whereas the presumption in favor of a plaintiff's forum choice addresses the private interests of the plaintiff. Additionally, I do not understand how the recognition of a federal interest in this litigation would add anything to the public interest scales when the district court already recognized Florida's interest in this litigation. For these reasons, the weight of the public interest in avoiding the application of foreign law does not turn on whether the plaintiff is domestic or foreign.[7]

## IV. CONCLUSION

For these reasons, I respectfully dissent from today's decision, and would instead affirm the district court.

---

[7] Alternatively, to the extent the majority merely intends to pronounce the district court could not accord dispositive weight to the potential application of foreign law, the majority knocks down a straw man argument never adopted by the district court. The district court never accorded dispositive weight to the potential application of foreign law because it already had balanced the private interests and concluded they were at or near equipoise. As such, the application of foreign law was nothing more than one of two public interests that tipped the *forum non conveniens* scale toward dismissal. Accordingly, the majority's contrary citation to *Burt v. Isthmus Development Co.*, 218 F.2d 353, 357 (5th Cir. 1955), is inapposite. (Opinion at 14 n.11.)