[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12396
Non-Argument Calendar
_____

D. C. Docket No. 1:08-cv-20662-JAL

BEVERLY MCLANE and
BRAD MCLANE, her husband,

                                                    Plaintiffs-Appellants,

versus

MARRIOTT INTERNATIONAL, INC.,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 11, 2013)

Before HULL, ANDERSON, and DUBINA, Circuit Judges.

PER CURIAM:

Plaintiffs–Appellants Beverly McLane and Brad McLane ("the McLanes")

appeal the district court's grant of Defendant–Appellee Marriott International, Inc.'s ("Marriott") motion to dismiss on the basis of <u>forum non conveniens</u>. This case and same issue are before the Court for a second time. In <u>McLane v. Los Suenos Marriott Ocean and Golf Resort</u>, 476 F. App'x 831 (11th Cir. 2012) ("<u>McLane I</u>"), we reversed the district court's grant of Marriott's <u>forum non conveniens</u> motion after we concluded there was no indication in its opinion that the district court, in its balancing, had weighed the presumption against disturbing the McLanes' initial forum choice. <u>Id.</u> at 833-34. We remanded to the district court for reconsideration because it was "unclear whether the district court, applying the presumption correctly, would conclude that dismissal is nevertheless appropriate." <u>Id.</u> at 834.

Following our remand, the district court reconsidered Marriott's motion in light of our opinion and granted the motion after applying the presumption against disturbing the McLanes' forum choice. The McLanes now appeal from this decision, contending that the district court erred in its application of the presumption. After careful review of the record and the briefs, we affirm.

## I. BACKGROUND

We briefly recall the basic facts. United States citizens Beverly McLane and her husband, Brad McLane, went on vacation in Costa Rica, where they stayed at the Los Suenos Marriott Resort. During their stay, Brad McLane chartered a boat,

the <u>Terry Lee</u>, owned by a Costa Rican boat charter company, Costa Rica Dreams.

The McLanes boarded the <u>Terry Lee</u>, operated by Costa Rican citizens Captain

Hugo Nunez Barrios ("Nunez") and his mate, from a marina adjacent to the Resort.

During the voyage, the boat hit a large wave and Beverly McLane was thrown to

the deck, fracturing a vertebrae. <u>McLane I</u>, 476 F. App'x  at 832.

Beverly McLane brought suit to recover for her injuries, alleging negligent

operation of the boat.  Brad McLane filed a loss of consortium claim.  The

McLanes named various entities as defendants, including Marriott.  The McLanes

alleged that Marriott was vicariously liable for Mrs. McLane's injury because of an

implied or apparent agency relationship between Marriott and other entities or

persons that organized or operated the boating trip.  The McLanes raised no claim

of active negligence against Marriott.

The defendants moved to dismiss on various grounds.  The district court first

dismissed two defendants for lack of personal jurisdiction.  The district court then

dismissed Marriott on the basis of <u>forum non conveniens</u>.   The McLanes appealed

the dismissal of Marriott.

In the first appeal, this Court held that "the district court should have

weighed the presumption against disturbing the [McLanes'] choice in its balancing

of private factors, but there is no indication that it did so." <u>McLane I</u>, 476 F.

App'x  at 833.  This Court also noted that "nowhere in the opinion did the district

3

court acknowledge that this presumption is at its strongest when plaintiffs are U.S. citizens, and nowhere did the district court point to unusually extreme circumstances or manifest extreme injustice that would merit denying a U.S. citizen access to U.S. courts." Id. Explaining that "a district court's failure to weigh the presumption in favor of the plaintiffs into the balancing of private factors has been held to be a clear abuse of its discretion," we reversed and remanded. Id.

On remand, the district court again granted Marriott's motion.

## II. STANDARD OF REVIEW

"The forum non conveniens determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, 102 S. Ct. 252, 266 (1981). Under the abuse of discretion standard, our review is "extremely limited" and "highly deferential," In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007) (internal quotation marks omitted), requiring us to "affirm unless we find that the district court has made a clear error of judgment, . . . has applied the wrong legal standard," Aldana v. Del Monte Fresh Produce N.A., Inc., 578 F.3d 1283, 1288 (11th Cir. 2009), or has "fail[ed] to balance the relevant factors,"

4

La Seguridad v. Transytur Line, 707 F.2d 1304, 1308 (11th Cir. 1983).   Indeed,

abuse of discretion review acknowledges that "there is a range of choice for the

district court and so long as its decision does not amount to a clear error of

judgment we will not reverse even if we would have gone the other way had the

choice been ours to make." McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir.

2001).

Moreover, "[f]actual determinations are reviewed for clear error." Leon v.

Millon Air, Inc., 251 F.3d 1305, 1310 (11th Cir. 2001).

### III. FORUM NON CONVENIENS

Under the doctrine of forum non conveniens, "a federal district court may

dismiss an action on the ground that a court abroad is the more appropriate and

convenient forum for adjudicating the controversy." Sinochem Int'l Co. Ltd. v.

Malaysia Int'l Shipping Corp., 549 U.S. 422, 425, 127 S. Ct. 1184, 1188 (2007).

Dismissal is appropriate "when an alternative forum has jurisdiction to hear a case,

and when trial in the chosen forum would establish oppressiveness and vexation to

a defendant out of all proportion to plaintiff's convenience, or when the chosen

forum is inappropriate because of considerations affecting the court's own

administrative and legal problems." Wilson v. Island Seas Invs. Ltd., 590 F.3d

1264, 1269 (11th Cir. 2009) (internal quotation marks omitted).

The defendant, as the party seeking dismissal, "has the burden of persuasion

5

as to all elements of a <u>forum non conveniens</u> motion." <u>Leon</u>, 251 F.3d at 1310-11. To meet this burden, the defendant "must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." <u>Membreno v. Costa Crociere S.p.A.</u>, 425 F.3d 932, 937 (11th Cir. 2005) (internal quotation marks omitted).

The first and third requirements are not at issue in this appeal. As we noted in the first appeal, the McLanes "concede that Costa Rica is an adequate and available forum, so we will not discuss this issue." <u>McLane I</u>, 476 F. App'x at 832. The McLanes also do not seem to challenge the district court's conclusion that the McLanes would not "suffer undue prejudice or significant inconvenience in a Costa Rican court."

The district court put in place multiple safeguards to protect the McLanes against any prejudice that may result from reinstating the case in Costa Rica. First, the district court conditioned its dismissal on Marriott's stipulation to (1) submit to jurisdiction in Costa Rica, (2) accept service of process from a Costa Rican court, (3) waive any statute of limitation defense it may have in Costa Rica, (4) waive a claim for attorney's fees in Costa Rica, (5) make available relevant witnesses and documents to a Costa Rican court, and (6) respect the final judgment of a Costa Rican court. Second, the district court stated that it will re-activate this case in the

6

Southern District of Florida in the event the McLanes are "unable to reinstate this action in Costa Rica and such decision is affirmed by the highest court in Costa Rica."  Given that the McLanes do not challenge the adequacy of these safeguards, we need not discuss the prejudice prong any further.

We therefore turn to the second requirement.  The McLanes argue that Marriott as the defendant failed to carry its burden of showing that the private and public interests weigh in favor of dismissal.  We begin with the private interests.

## IV. PRIVATE INTERESTS

Private interests "pertain to the interests of the participants in the litigation." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1331 (11th Cir. 2011).  The Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S. Ct. 839 (1947), provided district courts with a non-exhaustive list of private-interest factors to consider in the forum non convenience analysis.   Those factor are the [i] "relative ease of access to sources of proof; [ii] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [iii] possibility of view of premises, if view would be appropriate to the action; and [iv] all other practical problems that make trial of a case easy, expeditious and inexpensive."   Id. at 508, 67 S. Ct. at 843. The Supreme Court instructed lower courts to "weigh relative advantages and obstacles to fair trial."  Id.

The Supreme Court in Gilbert also cautioned that "unless the balance is

strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Id.  District courts must therefore "consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice." La Seguridad, 707 F.2d at 1307.  "The presumption in favor of the plaintiff's initial forum choice is strongest when the plaintiff is a United States citizen." King v. Cessna Aircraft Co., 562 F.3d 1374, 1382 (11th Cir. 2009).   In that scenario, a district court must "'require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'"   SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1101 (11th Cir. 2004) (quoting La Seguridad, 707 F.2d at 1308 n.7) (additional internal quotation marks omitted).

The McLanes are citizens of the United States and are thus entitled to a strong presumption in favor of their initial forum choice.  But the district court on remand concluded that "unusually extreme circumstances" exist and "manifest extreme injustice would result in trying this case" in the Southern District of Florida.  Accordingly, the district court ruled that the private interests weigh in favor of dismissal.  We cannot say that the district court abused its discretion in reaching this conclusion after it considered all relevant private interest factors.

8

A.    **Relative Ease of Access to Sources of Proof**

The district court began its analysis with the "relative ease of access to sources of proof," which is "[p]erhaps the most important private interest of the litigants." Ford v. Brown, 319 F.3d 1302, 1308 (11th Cir. 2003) (internal quotation marks omitted). The district court determined that this "factor clearly weighs in favor of dismissal" because "[t]he accident occurred in the waters just off the coast of Costa Rica" and many of "the critical witnesses concerning liability reside in Costa Rica." Specifically, the district court pointed to the significance of two witnesses, Captain Nunez and his mate. These two are paramount to the issue of Marriott's liability, given that the only claim against Marriott is that the company is vicariously liable for the negligent operation of the Terry Lee. As such, the testimony of the two people who actually operated the Terry Lee is crucial to the resolution of this case and to Marriott's liability.

The district court further noted that additional witnesses reside in Costa Rica, including (1) a group of people with knowledge about the condition of the Terry Lee, (2) medical professionals who treated Mrs. McLane after the accident, and (3) a "plethora of other witnesses" who will provide background information about the relationships between the defendants and the circumstances surrounding the charter rental and the accident.

The district court did not place great weight on the McLanes' claim that

9

Mrs. McLane would not be able to travel to Costa Rica for a trial. The district court noted that (1) Mrs. McLane had not submitted any medical evidence "confirming her inability to travel," and (2) according to the McLanes' expert on Costa Rican law, "the parties may present evidence in writing and there is no trial by jury" in Costa Rica. The district court was therefore satisfied that even if Mrs. McLane "cannot attend part or all of her trial in Costa Rica, [the McLanes] will nonetheless be able to present their case and their access to proof and witnesses only available in Costa Rica will not be impinged."

A review of the Mrs. McLane's affidavits reveals that she is afraid to travel for a trial in Costa Rica because of (1) her ongoing need for treatment, and (2) her inability to obtain the necessary pain medication while in Costa Rica. She does not say, however, that <u>she cannot travel</u>. Nor has she supported her claim with medical evidence. Moreover, the McLanes' Costa Rican legal expert testified that "an 'ordinary' civil trial is conducted primarily in written form." Thus, we cannot find clear error in the district court's determinations (1) that Mrs. McLane has not sufficiently documented her inability to travel and (2) that the McLanes can adequately present their case in a Costa Rican court in the event Mrs. McLane cannot attend all or parts of the trial. <u>See</u> <u>Szumlicz v. Norwegian Am. Line, Inc.</u>, 698 F.2d 1192, 1196 (11th Cir. 1983) (A district court's "factual finding . . . should not be disturbed on review unless clearly erroneous.").

In sum, we find no abuse of discretion in the district court's conclusion that the "ease of access" factor strongly favors Marriott. Because key witnesses necessary for the resolution of the critical issue of liability reside in Costa Rica, the district court could weigh this factor against a trial in Florida.

**B.    Availability of Compulsory Process**

The same circumstances also underpin the district court's conclusion with respect to the second factor, the availability of compulsory process. Because it cannot not exercise jurisdiction over Captain Nunez, the first mate, and Costa Rica Dreams (the operator of the boat ride), the district court concluded that this factor favors dismissal. Captain Nunez and the mate failed to appear for their depositions. The district court is without power to compel these two residents of Costa Rica to testify. By contrast, a Costa Rican court could force Captain Nunez and his mate to appear for a deposition and/or to provide evidence. Given the importance of these two witnesses to this case, the district court concluded that the "availability of compulsory process" factor weighs against a trial in Florida. We discern no abuse of discretion in this determination.

**C.    View of Premises and Enforceability of a Judgment**

The district court gave brief consideration to two factors: (1) the view of the premises and (2) the enforceability of a judgment. With respect to the first, the district court did not find a viewing of the Terry Lee necessary and thus assigned

11

little weight to this factor.  With respect to the second, the district court noted that Marriott's stipulation to the enforceability of an adverse Costa Rican judgment suggests that this factor supports dismissal.  We find no abuse of discretion in either conclusion.

**D**.    **Other Practical Problems**

The district court then turned to "all other practical problems."   Specifically, the district court pointed out that Marriott cannot implead Captain Nunez, the mate, and Costa Rica Dreams if the case remains in Florida. Conversely, a Costa Rican court could implead these three potential third-party defendants, thus allowing an "easy, expeditious and inexpensive" trial of this case.  See Gilbert, 330 U.S. at 508, 67 S. Ct. at 843.   We find no abuse of discretion in the district court's conclusion that this circumstance also supports dismissal on the basis of forum non conveniens.   Given that Marriott's liability in this case would be derivative of the negligence of Nunez, the mate, and Costa Rica Dreams, the inability to implead these three potential third-party defendants supports dismissal.  See Piper Aircraft, 454 U.S. at 259, 102 S. Ct. at 267- 68 (holding that "the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in Scotland"); Tazoe, 631 F.3d at 1332 (holding that the inability to implead other alleged tortfeasors in federal district court weighs in favor dismissal).

### E.    Balancing of Private Interest Factors

The district court balanced all of the private interest factors.  In so doing, the district court expressly noted "that there is a strong presumption against disturbing a plaintiff's choice of forum and that this presumption is at its strongest when a plaintiff is a United States citizen."  Notwithstanding this presumption, the district court concluded that the balance of private interests weighs "in favor of dismissal of this action so it can be litigated in Costa Rica."

The district court reached this conclusion after carefully recounting all of the private interest factors in the case.  It noted four private interest factors in support of dismissal: (1) the ease of access to sources of proof favors Costa Rica because critical witnesses reside there; (2) the availability of compulsory process also favors Costa Rica because the district court cannot compel Captain Nunez and his mate to testify in Florida nor by deposition; (3) Marriott cannot implead three potential third-party defendants (Nunez, the mate, and Costa Rica Dreams) in the Southern District of Florida, but it can do so in Costa Rica; and (4) Marriott will stipulate to the enforceability of an adverse judgment in Costa Rica.  By contrast, only one private interest factor, the view of the Terry Lee, does not support dismissal.

The district court therefore concluded that "the private interest factors strongly favor" Marriott.  In fact, the court found the balance so strongly in favor

13

of dismissal that there are "unusually extreme circumstances in this case" and that "manifest extreme injustice would result in trying this case" in the Southern District of Florida. As a result, the district court determined that the private interest factors in this case overcome the strong presumption in favor of the McLanes' choice of their home forum.

We cannot say that the district court abused its discretion in reaching this conclusion. This Court reversed a forum non conveniens dismissal in SME Racks, supra, because the district court in that case "failed to articulate the relevant standards [for plaintiffs that are citizens of the United States] and failed to apply any presumption in its analysis." 382 F.3d at 1102. But after our reversal in the first appeal of this case, the district court on remand expressly articulated the correct standard and correctly applied the strong presumption in favor of the McLanes' forum choice.

As we noted in SME Racks, "'dismissal should not be automatically barred when a domestic plaintiff has filed suit in his home forum.'" Id. at 1101 (quoting Piper Aircraft, 454 U.S. at 255 n. 23, 102 S. Ct. 252) (internal alterations omitted). Indeed, this Court in two cases affirmed forum non-conveniens dismissals even though the plaintiffs were residents and/or citizens of the United States. See Aldana, 578 F.3d at 1294; Tazoe, 631 F.3d at 1335.

First, in Aldana, we affirmed the dismissal of claims brought by a group of

14

Guatemalan plaintiffs who had been granted asylum in the United States.  The plaintiffs alleged "that they were tortured in retaliation for their leadership of a Guatemalan national labor union in violation of the Alien Tort Act . . . and the Torture Victim Protection Act of 1991." 578 F.3d at 1286.  This Court noted that "[t]he district court squarely took account of our requirement that there be 'positive evidence of unusually extreme circumstances,' and that the court be 'thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" Id. at 1293 (quoting SME Racks, 382 F.3d at 1101-02).

In Aldana, this Court then observed that the district court had concluded "that the lineup of private interest factors found in this case constituted positive evidence of unusually extreme circumstances, sufficient to override the real presumption in favor of the plaintiffs' forum choice, and that on the whole, the balance of private interest factors strongly favored Guatemala." Id. at 1294 (internal citations and quotation marks omitted).  We noted that "[i]t was only after precise and careful analysis that the district court came to this conclusion." Id.  As a result, this Court in Aldana saw "no basis for the appellants' claim that the district court disregarded completely Plaintiffs' choice of forum, . . . nor any ground for concluding that this aspect of the court's analysis amounted to a clear abuse of discretion." Id.  (internal quotation marks omitted)

15

This Court reached the same conclusion in Tazoe, supra, where citizens of the United States brought a wrongful death claim in Florida after a family member (a U.S. citizen and resident of Florida) died in an airplane crash in Brazil. 631 F.3d at 1328-29. This Court affirmed the forum non conveniens dismissal. Id. at 1335. We again distinguished SME Racks because, unlike in SME Racks, the district court in Tazoe "articulated the correct standard, gave deference to the choice of forum of Tazoe's family members based on their status as citizens of the United States, and supported its decision with persuasive analysis." Id. Notably, as in this case, the district court in Tazoe concluded that the private factors strongly favored dismissal in part because (1) the district court could not compel the testimony of certain witnesses and (2) the defendant could not implead certain third-party defendants. Id. at 1331-32. This Court found no abuse of discretion in the district court's dismissal on the basis of forum non conveniens. Id. at 1335.

These cases compel the same result here. On remand, the district court in this case "squarely took account of" and applied the strong presumption in favor of the McLanes' choice of forum. The district court then found that in an American court, Marriott could not compel the testimony of the alleged actual tortfeasors and could not implead the alleged actual tortfeasors as third party defendants. The district court thus concluded that there was "positive evidence of unusually extreme circumstances" and that "material extreme injustice" would occur if the

16

case were tried in the Southern District of Florida.  As we have explained before, such a finding can be "sufficient to override the real presumption in favor of the plaintiffs' forum choice," Aldana, 578 F.3d at 1294, provided that the district court made this finding "after precise and careful analysis" of all private interest factors. Id.; see also Tazoe, 631 F.3d at 1331-32, 1335 (affirming forum non conveniens dismissal of claims brought by U.S. citizens where district court concluded that strong presumption was overcome in part because the district court could not compel the testimony of certain key witnesses and the defendant could not implead potential third-party defendants).

As detailed above, the district court in this case "considered all relevant . . . private interest factors," and we cannot say its "balancing of these factors" was unreasonable.  See Piper Aircraft, 454 U.S. at 257, 102 S. Ct. at 266.  Thus, the district court's "decision deserves substantial deference," id., and we may reverse only "if it constitutes a clear abuse of discretion," Membreno, 425 F.3d at 935-36. Given that the district court here "articulated the correct standard, gave deference to the [McLanes'] choice of forum, and supported its decision with persuasive analysis," Tazoe, 631 F.3d at 1335, we find no clear abuse of discretion here.

## V. PUBLIC INTEREST FACTORS

We also find no abuse of discretion in the district court's determination that the public interest factors favor dismissal.  When ruling on a motion to dismiss on

17

the basis of <u>forum non conveniens,</u> a district court "must consider [certain] 'public factors,' which pertain to the relative interests of the two fora." <u>Tazoe,</u> 631 F.3d at 1334.  The Supreme Court has identified these public interest factors: (1) "'the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized controversies decided at home'";  (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action"; (4) "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law"; and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." <u>Piper Aircraft,</u> 454 U.S. at 24 n.6, 102 S. Ct. at 258 n.6 (quoting <u>Gilbert,</u> 330 U.S. at 509, 67 S. Ct. at 843).

The district court assigned little weight to the first and fifth factors listed by the Supreme Court.  As to the first factor, the court found that the Southern District of Florida is "current in its civil docket" and neither "party has made any showing that Costa Rican courts suffer from a congested docket."  The district court concluded that the administrative difficulties flowing from court congestion have little impact, one way or another, on the <u>forum non conveniens</u> analysis in this case.  The district court also gave little weight to the fifth factor, the unfairness of burdening citizens in an unrelated forum with jury duty.   Nonetheless, after noting that a "South Florida jury would have a minor interest in a litigation stemming from a boating accident involving U.S. citizens in Costa Rica, in which almost all

18

defendants are Costa Rican entities and Costa Rican law would seemingly govern," the district court concluded that this factor "still favors dismissal." We find no clear abuse of discretion in either conclusion.

As to the second factor, the district court concluded that Costa Rica has a substantial interest in resolving this case while Florida's interest is minimal. The court pointed out that (1) the accident occurred in Costa Rica, and (2) the McLanes chartered the boat from a Costa Rican company operating on Costa Rican soil. Thus, Costa Rican interests here include the "the safety of boat passengers in a Costa Rican vessel, the licensing, training and supervision of Costa Rican boating crews, the maintenance and operation of Costa Rican sportfishing boats and Costa Rican agency relationships." Given that "[t]he resolution of this action will undoubtedly affect the burgeoning tourism industry of Costa Rica," the court found Costa Rica's interest to be substantial. The district court therefore weighed the local interest factor in favor of a trial in Costa Rica.

The district court then turned to the federal interests of the United States. It acknowledged that "there is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." See SME Racks, 382 F.3d at 1104. But the district court also noted that because the injury in this case occurred on foreign soil, "the interest of the United States is

19

somewhat diminished." We cannot find a clear abuse of discretion in the district court's assessment of the local interest and the federal interests.

As to the fourth factor, the district court considered whether the Southern District of Florida would have to apply foreign law in this case. As the Supreme Court has explained, district courts should consider "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law." Piper Aircraft, 454 U.S. at 241 n.6, 102 S. Ct. at 258 n.6 (citing Gilbert, 330 U.S. at 509, 67 S. Ct. at 843). While "this factor cannot be accorded dispositive weight," SME Racks, 382 F.3d at 1105, "[t]he need to apply foreign law . . . also favors dismissal," Tazoe, 631 F.3d at 1334; see also Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1284 (11th Cir. 2001) (affirming forum non-conveniens dismissal and indicating that the "possibility that the district court would have to apply Argentine law to decide this case" weighed in favor of dismissal).

The district court concluded that under Florida's choice of law analysis applicable to this diversity case, it is likely that "Costa Rican law . . . would govern this action." The district court therefore held that "this factor weighs in favor of Costa Rica as the proper forum." We find no abuse of discretion in this conclusion.

20

In sum, two of the five public interest factors had little significance in the district court's assessment of the case. That left (1) the local interests of Costa Rica, (2) the federal interests of the United States, and (3) problems resulting from the application of foreign law. Two of those three favored dismissal, according to the district court's analysis. Even assuming that the federal interests of the United States equal the local interests of Costa Rica, the need to apply foreign law sways the balance of the public interest factors in favor of a trial in Costa Rica.

## VI. CONCLUSION

For the reasons set forth above, we cannot say the district court abused its discretion and thus we affirm the district court's dismissal on the basis of forum non conveniens.

**AFFIRMED.**